# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN (DETROIT)

In Re:

Tammie Joy Clark,

Debtor.

Chapter 7
Case No. 26-41512-MAR
Honorable Mark A. Randon

## DEBTOR'S RESPONSE IN OPPOSITION TO CREDITORS' AMENDED MOTION FOR LEAVE TO EXTEND THE TIME TO OBJECT TO DISCHARGE AND FOR LEAVE TO FILE A TARDY OR DELAYED COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBTS AND TO DENY DISCHARGE

### INTRODUCTION

This matter arises out of creditors, David Kassa, Mary Kassa, Tom Piros a/k/a Tom Crock, Erica Crock, Emma DeHerder, William DeHerder, Lyle Masserant, Connie Masserant and Marcie Van Black's (the "Creditors") motion to file a delayed adversary complaint. That motion should be denied.

The Bankruptcy Rules give creditors a fair but limited window to investigate, seek discovery, request more time, and file any complaint objecting to discharge or dischargeability. Those deadlines protect the central promise of Chapter 7: finality and a fresh start. The Creditors had that window. They let it close.

The Creditors now seek leave to file a delayed adversary complaint asserting claims under both 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6), and 11 U.S.C. § 727(a)(3), (a)(4)(A), and (a)(5). Their motion should be denied for three independent reasons.

First, the Creditors have not applied any cogent analysis justifying any equitable factors which would permit a delayed filing. The Creditors cite Rules 4004 and 4007, but they do not

1

apply the governing law to the facts. They do not analyze the "cause" standard under *Brady*. They do not address the five-factor inquiry under *St. George*. They do not identify what they did before the deadline, what facts were unavailable, why those facts could not have been discovered earlier, or how any newly discovered fact supports the proposed complaint. It is not this Court's job to parse out a cogent analysis when a movant fails to provide one. Nor should the Debtor be required to shadow-box arguments that may belatedly come in the Creditors' reply. For this reason alone the motion must be denied.

The second problem is diligence. Rules 4004(b) and 4007(c) apply the same "for cause" standard to requests for more time to challenge discharge and dischargeability. Whether the Court applies *Brady*'s "minimally sufficient showing" standard or *St. George*'s five-factor test, diligence remains central. The Creditors identify no diligent pre-deadline effort. They do not say they attended the § 341 meeting, asked the Debtor questions, requested documents, contacted the Chapter 7 trustee or the United States Trustee, sought a Rule 2004 examination, subpoenaed records, filed a timely motion to extend, or prepared a protective complaint. They already had the essential facts underlying their proposed complaint: contracts, payments, allegedly incomplete projects, and claimed damages. Those facts were enough to investigate and, if necessary, seek more time before May 11, 2026.

Perhaps most egregiously, the proposed complaint confirms the absence of cause for the delay. It pleads that a Rule 2004 examination "would provide further basis" to challenge discharge, that bank records may reveal critical information, that certain testimony is expected, and that the Creditors intend to amend later. Assuming this is true—why did the Creditors not undergo these critical investigative steps (which were available to them) prior to the deadline? The silence of the Creditor's motion in this regard is damning. The Creditors apparently knew what investigative

2

tools could have provided them a factual basis for their complaint but failed to exercise any of them.

Finally, the United States Trustee's separate extension does not save the Creditors. The Creditors admit that the extension order appears to apply only to the United States Trustee. A trustee's separate extension is not a blanket extension for private creditors who did not timely move for their own relief. Allowing the Creditors to piggyback on that order would undermine the deadlines imposed by Rules 4004 and 4007 and reward the very inaction those Rules are designed to prevent. Further, the Trustee's position is distinguishable, it reached out to Debtor *prior to* the deadline expiring and proffered a reason for the delay—the Creditors did neither of these.

The Bankruptcy Rules gave the Creditors a deadline and the tools needed to act before that deadline expired. The Creditors did not use them. Because their motion offers conclusions instead of analysis, speculation instead of facts, and post-deadline investigation instead of diligence, the Court should deny it.

**RELEVANT FACTUAL BACKGROUND**

Tammie Joy Clark filed this Chapter 7 case on February 13, 2026. (See ECF No. 1, Petition.) The original deadline to object to discharge and to file a complaint to determine dischargeability was May 11, 2026. The creditors' own supporting brief acknowledges that deadline. (ECF No. 21, Mot., Ex. 3, Br. in Supp. at 3, Page 13 of 82.) The supporting brief also acknowledges that the United States Trustee obtained an extension to July 10, 2026. (*See id.*) The Creditors' motion admits that the order extending the deadline "appears to extend the time for filing such a Complaint until July 10, 2026 only for the U.S. bankruptcy trustee."[1] (ECF No. 21, Mot. ¶ 2, Pages 1-2 of 82.)

---

[1] Even though the Creditors use the term "appears" there is no ambiguity in the Court's order.

3

The creditors did not move to extend their own deadline before May 11, 2026. They filed the present amended motion on June 16, 2026, (*see* ECF No. 21, Mot.)—a month late. They ask the Court to extend the time for them to object to discharge and to allow them to file a "tardy or delayed" complaint asserting both § 523 and § 727 claims. (ECF No. 21, Mot. at 1-3, Prayer for Relief, Pages 1-3 of 82.)

The motion also admits that all moving creditors except David and Mary Kassa received original notice of the bankruptcy filing. (ECF No. 21, Mot. ¶ 3, Page 2 of 82.) The motion states that David and Mary Kassa were added as creditors on April 6, 2026. (*See id.*, ¶ 4, Page 2 of 82.)

The Creditors' factual basis for this motion is narrow. They say they "only recently compared information and determined a more than adequate basis to challenge the discharge." (*See id.*, ¶ 5, Page 2 of 82.) They further allege, "[u]pon information and belief," that "there is a current State Police investigation regarding the conduct of the Debtor." (*See id.*, ¶ 6, Page 2 of 82.) Their supporting brief adds that, after creditors began contacting each other "based on the new list of creditors," they discovered information concerning alleged fraud. (ECF No. 21, Mot., Ex. 3, Br. in Supp. at 3, Page 13 of 82.) The supporting brief contains no affidavit, no declaration, no documentary proof of the alleged investigation, no statement from the alleged former employee, and no analysis tying any alleged new facts to the basis in their proposed complaint. Finally, they do not articulate using any available discovery tools to uncover a further factual basis for their complaint.

The proposed complaint confirms that the creditors' claims arise from prepetition construction contracts and alleged nonperformance. The proposed complaint alleges that Ms. Clark, individually or through entities identified as Four Seasons Sunrooms of Ann Arbor, LLC and Ann Arbor Sunrooms Kitchen & Bath, was involved in sunroom or home-improvement

4

projects with the creditor group. (ECF No. 21, Mot., Ex. 6, Proposed Compl., ¶¶ 12–14, Pages 20-21 of 82.) The proposed complaint alleges that the Kassas entered a July 17, 2024 contract, paid $99,979.67, and did not receive a completed project. (*See id.*, ¶¶ 16–24, Pages 21-23 of 82.) It alleges that the DeHerders entered a June 9, 2025 contract, paid $57,000, and received no benefit. (*See id.*, ¶¶ 25–29, Pages 23-24 of 82.) It alleges that the Masserants paid $50,000, the Crock/Piros creditors paid $70,000, and Marcie Van Black paid $20,000 for incomplete work. *See id.*, ¶¶ 30–34, Pages 24-25 of 82.)

Those allegations show that the creditors knew the core facts underlying their grievances before the May 11 deadline: the contracts, the payments, the alleged lack of performance, and the claimed damages. The proposed complaint does not identify a newly discovered asset, a newly discovered false oath, a newly discovered transfer, or newly discovered records concealment. Instead, it relies on speculation. Paragraph 36 alleges "[u]pon information and belief" that a former employee is "prepared to testify" that Ms. Clark engaged in similar conduct. (*See id.*, ¶36, Page 25 of 82.) Paragraph 39 states that the creditors have not conducted a Rule 2004 examination, but believe such an examination "would provide further basis" to challenge discharge; that it is "possible" business and bank records "will reveal critical information"; and that the creditors "have no way to make specific allegations" but "will amend" later. (*See id.*, ¶39, Page 26 of 82.)

The § 727 counts follow the same pattern. The proposed § 727(a)(3) count alleges "[u]pon information and belief" that Ms. Clark cannot account for funds and states that, although no Rule 2004 examination has occurred, "it is expected" Ms. Clark will testify that she failed to maintain records. (ECF No. 21, Mot., Ex. 6, Proposed Compl. ¶¶ 67–70, Pages 32-33 of 82.) The § 727(a)(4)(A) count alleges "[u]pon information and belief" that Ms. Clark made false oaths and "may, upon further proofs," have diverted funds. (*See id.*, ¶¶ 74–75, Page 34 of 82.) The § 727(a)(5)

5

count alleges that Ms. Clark has made no satisfactory effort to explain the disposition of funds. *See id.*, ¶¶ 77–80, Page 35 of 82.)

The creditors' proposed complaint therefore seeks an adversary proceeding so they can search for facts that might later support their claims. The Bankruptcy Rules require the opposite sequence: a creditor must investigate, identify a legal and factual basis, and file before the deadline expires unless a narrow rule-based or equitable exception applies.

### STANDARD OF REVIEW

Rules 4004 and 4007 impose short, predictable deadlines because discharge is the central protection of the bankruptcy process. *See, In re Luckey*, 2019 WL 1028905 at *2, 2019 Bankr. LEXIS 645 at *4 (Bankr. N.D. Ohio Mar. 4, 2019)(Whipple, J.)("[C]ause is to be narrowly construed to promote prompt resolution of the case and the debtor's fresh start.") In a Chapter 7 case, a complaint objecting to discharge under § 727 must be filed within 60 days after the first date set for the § 341 meeting of creditors. Fed. R. Bankr. P. 4004(a)(1). The same 60-day deadline applies to a complaint seeking a determination that a debt is nondischargeable under § 523(c). Fed. R. Bankr. P. 4007(c). Each rule permits an extension only on a motion filed before the deadline expires and only "for cause." Fed. R. Bankr. P. 4004(b)(1), 4007(c). However, a Court may extend the time for filing pursuant to its equitable powers under 11 USC § 105(a) *In re Doyne*, 520 BR 566, 570 (BAP 6th Cir, 2014) provided "cause" is shown.

Courts apply the "for cause" standard under Rules 4004(b) and 4007(c) in the same way. The rules use parallel language, serve the same deadline-enforcement function, and both protect the debtor's fresh start by requiring prompt action from creditors who wish to challenge discharge or dischargeability. *See In re Sheppard*, 532 B.R. 672, 676 (B.A.P. 6th Cir. 2015); *In re Motil*, No.

6

22-10571, 2022 WL 2761042, at *1, 2022 Bankr. LEXIS 1938, at *3–4 (Bankr. N.D. Ohio July 14, 2022).

The Sixth Circuit and Sixth Circuit BAP have described the showing of cause in two different ways. In *Brady*, the Sixth Circuit stated that a party seeking an extension under Rule 4007(c) must make "some minimally sufficient showing of cause." *Brady v. McAlliste*r (In re Brady), 101 F.3d 1165, 1171 (6th Cir. 1996). Later, in *In re St. George*, the Sixth Circuit BAP adopted a more structured, more demanding, five-factor inquiry for Rule 4004(b): "(1) whether the creditor has received sufficient notice of the deadline and the information to file an objection; (2) the complexity of the case; (3) whether the creditor has exercised diligence; (4) whether the debtor has refused in bad faith to cooperate with the creditor; and (5) the possibility that proceedings pending in another forum will result in collateral estoppel of the relevant issues." *McDermott v. St. George* (In re St. George), Nos. 16-8017/8018, 2017 WL 1379321, at *4, 2017 Bankr. LEXIS 1065, at *8–9 (B.A.P. 6th Cir. Apr. 17, 2017).

Bankruptcy courts in this Circuit have recognized the apparent tension between those approaches. *In re Motil* explained that *Brady* "embraced a low threshold to show sufficient cause," while *St. George* "adopted what seems to be a heightened 'for cause' standard using a five-factor test." *In re Motil,* 2022 WL 2761042, at *2, 2022 Bankr. LEXIS 1938, at *4–5. In *In re Riggs*, the Court repeated that contrast and declined to choose between the two because the creditor there failed under either standard. *In re Riggs*, ___BR___; 2023 Bankr LEXIS 400, at *6 (Bankr ND Ohio, Feb. 14, 2023). The same approach applies here: even under *Brady*'s lower threshold, the movant must still show a real reason why more time was needed; under *St. George*, the movant must also account for notice, complexity, diligence, debtor cooperation, and any pending proceeding that might preclude relevant issues.

Diligence remains the central inquiry under either formulation. Cause exists when the creditor needs additional time despite reasonable efforts to investigate before the deadline. A creditor may show diligence by using the tools available in bankruptcy practice, including attending the § 341 meeting, requesting documents, communicating with the trustee or debtor's counsel, and, where appropriate, promptly seeking a Rule 2004 examination. By contrast, a creditor's failure to act during the 60-day period weighs heavily against cause. *In re Riggs*, ___ BR ___; 2023 Bankr LEXIS 400, at *16 (Bankr ND Ohio, Feb. 14, 2023)

Nor can a creditor establish cause merely by pointing to the seriousness of the proposed allegations. Every § 523(a)(2), (4), or (6) complaint alleges some form of wrongful conduct, and every § 727 objection threatens the debtor's fresh start. Allegations of fraud therefore do not supply cause by themselves. *See In re Luckey,* No. 18-32908, 2019 WL 1028905, at *4, 2019 Bankr. LEXIS 645, at *9–10 (Bankr. N.D. Ohio Mar. 4, 2019);. The question is not whether the proposed complaint accuses the debtor of serious misconduct. The question is whether the creditor acted diligently and still needed more time to plead a proper claim before the deadline expired.

For these reasons, whether the Court applies *Brady*'s "minimally sufficient" standard or *St. George*'s five-factor test, the result turns on the same core principles: timely notice, creditor diligence, actual need for more time, and the absence of prejudice to the debtor's fresh start. A creditor who had notice of the deadline, possessed or could have obtained the relevant facts, failed to use available discovery tools, and then sought leave only after the deadline cannot satisfy Rule 4004(b) or Rule 4007(c).

## **ARGUMENT**

### **I. The Creditors have failed to make any showing to meet their burden.**

The moving party bears the burden to show cause for an extension under Rules 4004(b) and 4007(c). *McDermott v. St. George (In re St. George)*, Nos. 16-8017/8018, 2017 WL 1379321, at *4, 2017 Bankr. LEXIS 1065, at *8–9 (B.A.P. 6th Cir. Apr. 17, 2017); *In re Riggs*, ___ B.R. ___, 2023 Bankr. LEXIS 400, at *17–18 (Bankr. N.D. Ohio Feb. 14, 2023). That burden matters here because the Creditors' motion does not apply any governing standard. It quotes Rules 4004 and 4007, identifies the expired deadline, and then asks for relief based on conclusory assertions that the Creditors "recently compared information" and believe further investigation may uncover more.

That is not a showing of cause. A movant seeking extraordinary deadline relief must explain what facts were learned, when those facts were learned, why could not have been learned earlier, what efforts were made before the deadline, and how the newly learned facts support the specific claims the movant seeks to file. The Creditors do none of that. They do not analyze *Brady*. They do not analyze *St. George*. They do not identify diligence. They do not identify debtor misconduct that prevented a timely filing. They do not identify any pending proceeding that may preclude issues. They do not explain why a timely motion, protective complaint, document request, creditor conference, trustee communication, or Rule 2004 request could not have been pursued before May 11, 2026.

This Court should not supply the missing analysis for them. Nor should the Debtor be required to answer arguments that the Creditors may attempt to develop for the first time in reply. The motion fails for that reason alone.

**II. The Creditors cannot satisfy Rule 4007(c), Rule 4004(b)(2), *Brady*, or *St. George* because they missed the deadline, did not investigate, and identified no new facts.**

The Creditors seek two forms of late relief. First, they seek leave to file nondischargeability claims under § 523(a)(2), § 523(a)(4), and § 523(a)(6). Second, they seek leave to object to

9

discharge under § 727(a)(3), § 727(a)(4)(A), and § 727(a)(5). Both requests fail for the same practical reason: the Creditors missed the May 11, 2026 deadline, identified no diligent pre-deadline investigation, and now rely on speculation that discovery (which could have, and should have already occurred) may later reveal support for claims they did not timely pursue.

The Sixth Circuit has recognized that Rule 4007(c) and Rule 4004(b)'s deadlines are not jurisdictional and may, in narrow circumstances, be subject to equitable defenses. *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 344 (6th Cir. 2003). But equitable relief requires diligence and a legally sufficient reason why the creditor could not comply. *In re Doyne*, 520 B.R. 566, 570–72 (B.A.P. 6th Cir. 2014). In *Doyne*, the Sixth Circuit BAP affirmed denial of a late extension even where counsel claimed serious medical issues because the creditor failed to support the request with persuasive evidence and did not show debtor conduct preventing timely action. *Id.*

The Creditors' showing is substantially weaker than the showing rejected in *Doyne*. They do not claim court error. They do not claim the Debtor misled them about the deadline. They do not claim that the Debtor concealed the bankruptcy case. They do not claim that the Debtor prevented a timely filing. They do not submit an affidavit, declaration, police report, former-employee statement, correspondence, document request, Rule 2004 request, or any other evidence showing diligence.

They instead point to the seriousness of their proposed allegations. That does not establish cause. Every § 523(a)(2), § 523(a)(4), or § 523(a)(6) complaint alleges some form of wrongful conduct. If alleging fraud were enough to excuse Rule 4007(c), the deadline would not matter in the very cases to which it most often applies. As *Riggs* explained, "the mere fact that the contemplated dischargeability action grounds itself in fraud does not present sufficient justification

10

for an extension." *In re Riggs*, ___ B.R. ___, 2023 Bankr. LEXIS 400, at *33–34 (Bankr. N.D. Ohio Feb. 14, 2023).

In fact, the proposed complaint confirms the fundamental problem with the Creditor's motion. The Creditors plead that a Rule 2004 examination "would provide further basis" to challenge discharge, that it is "possible" bank records "will reveal critical information," and that they "have no way to make specific allegations" but intend to amend later. (ECF No. 21, Mot., Ex. 6, Proposed Compl. ¶ 39, Page 26 of 82.) Their § 727(a)(3) count alleges that "it is expected" the Debtor will testify that she failed to maintain records. (*See id.*, ¶ 68, Pages 32-33 of 82.) Their § 727(a)(4)(A) count alleges that the Debtor "may, upon further proofs," have diverted funds. (*See id.*, ¶ 75, Page 34 of 82.) Those allegations seek permission to search for a claim after the deadline expired and do nothing to explain why the Creditors did not use the tools available to them to seek this information in the appropriate fashion via a 2004 exam, document request or some other discovery tool.

This lack of diligence is fatal under either of the "cause" standards discussed in *Brady* or *St. George*. In *Brady*, the Sixth Circuit stated that a party seeking an extension under Rule 4007(c) must make "some minimally sufficient showing of cause." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1171 (6th Cir. 1996). In *St. George*, the Sixth Circuit BAP applied a more structured five-factor inquiry considering: "(1) whether the creditor has received sufficient notice of the deadline and the information to file an objection; (2) the complexity of the case; (3) whether the creditor has exercised diligence; (4) whether the debtor has refused in bad faith to cooperate with the creditor; and (5) the possibility that proceedings pending in another forum will result in collateral estoppel of the relevant issues." *McDermott v. St. George (In re St. George)*, Nos. 16-

11

8017/8018, 2017 WL 1379321, at *4, 2017 Bankr. LEXIS 1065, at *8–9 (B.A.P. 6th Cir. Apr. 17, 2017).

Bankruptcy courts have recognized the tension between those formulations. *Motil* observed that *Brady* "embraced a low threshold to show sufficient cause," while *St. George* "adopted what seems to be a heightened 'for cause' standard using a five-factor test." *In re Motil*, No. 22-10571, 2022 WL 2761042, at *2, 2022 Bankr. LEXIS 1938, at *4–5 (Bankr. N.D. Ohio July 14, 2022). *Riggs* followed the same approach and declined to choose between the two because the creditor failed under either standard. *Riggs*, 2023 Bankr. LEXIS 400, at *6. This Court can do the same.

The Creditors fail under *Brady* because they have not made even a minimally sufficient showing of cause. They do not explain why they waited. They do not identify what they did before May 11, 2026. They do not explain what facts were unavailable. They do not explain why the alleged facts could not have been discovered through ordinary diligence. They do not identify debtor misconduct that caused delay. Their motion offers conclusions, not cause.

They also fail under *St. George*. First, every moving creditor except David and Mary Kassa received original notice of the bankruptcy filing. (ECF No. 21, Mot. ¶ 3, Page 2 of 82.) Those creditors, therefore, had notice of the case and the May 11 deadline. They also had the essential information underlying their claims: the contracts, the payments, the allegedly incomplete work, and their claimed damages. Further, with respect to the Kassas, they still had notice a month before the deadline—a sufficient amount of time to ask for an appropriate extension.

Second, the case is not unusually complex. The proposed complaint arises from ordinary prepetition construction contracts and alleged nonperformance. The Creditors allege they paid money, the work was not completed, and the Debtor or related entities should be responsible. Those

facts may be disputed, but they are not so complex that the Creditors could not have filed a timely motion to extend or a protective complaint.

Third, the Creditors have not shown diligence. This factor is dispositive. They do not say they attended the § 341 meeting. They do not say they asked the Debtor questions. They do not say they requested records. They do not say they contacted the Chapter 7 trustee or United States Trustee before the deadline. They do not say they sought a Rule 2004 examination. They do not say they subpoenaed documents. They do not say they filed a timely motion to extend. They do not say they prepared a protective complaint. They do not even say when they first retained counsel or when they first began comparing information.

Fourth, there is no evidence that the Debtor refused to cooperate in bad faith. The Creditors identify no document request the Debtor ignored, no Rule 2004 order she violated, no meeting she refused to attend, no question she refused to answer, and no conduct that prevented a timely filing. A creditor cannot establish bad-faith noncooperation without showing that it sought cooperation in the first place.

Fifth, the alleged State Police investigation does not support an extension. The Creditors identify no pending civil action, criminal charge, administrative proceeding, judgment, or adjudicatory process that may result in collateral estoppel. They allege only, "upon information and belief," that an investigation exists. An investigation is not an adjudication.

The Creditors have shown zero basis for "cause" to extend the deadlines imposed by 4004 and 4007. Their motion should be denied.

**III. The Trustee's extension does not "save" the Creditors.**

The Creditors' request also cannot be saved by invoking the United States Trustee's July 10, 2026 deadline. Their own motion admits that the order "appears to extend the time for filing

such a Complaint until July 10, 2026 only for the U.S. bankruptcy trustee." (ECF No. 21, Mot., ¶ 2, Pages 1-2 of 82.) A deadline extension belongs to the party who requested and received it unless the motion and order extend the deadline for others. The Creditors cannot convert the United States Trustee's extension into a blanket extension for private creditors. Doing so would defeat the purpose of Rules 4004 and 4007 by allowing any creditor to wait and see whether the United States Trustee obtained more time, then file late based on that separate order. Further, the Trustee is not similarly situated, the Trustee reached out to Debtor *prior to* the deadline expiring and proffered a reason for the delay—the Creditors did neither.

The motion should therefore be denied as to both the § 523 claims and the § 727 claims.

## CONCLUSION

The Creditors had notice, time, and tools. They had the Bankruptcy Rules' 60-day window. They had the ability to ask questions at the § 341 meeting, request documents, contact the trustee, seek a Rule 2004 examination, subpoena records, file a protective complaint, or timely move for an extension. They did none of those things.

Their motion asks the Court to excuse that inaction based on conclusions, speculation, and a proposed complaint that admits the Creditors still need discovery to determine whether their claims can be pleaded with specificity. That is not cause under Rule 4004. It is not cause under Rule 4007. It fails under *Brady's* lower threshold, and it fails more clearly under *St. George's* five-factor test. The United States Trustee's separate extension does not change that result. It was not a blanket extension for private creditors who did not timely seek their own relief.

The deadlines in Rules 4004 and 4007 exist to bring finality to Chapter 7 cases and to protect the debtor's fresh start. Allowing the Creditors to file a delayed adversary complaint on

this record would turn those deadlines into suggestions and reward the very lack of diligence the Rules are designed to prevent.

For these reasons, the Debtor, Tammie Joy Clark, respectfully requests that this Court deny the Creditors' Amended Motion for Leave to Extend the Time to Object to Discharge and for Leave to File a Tardy or Delayed Complaint to Determine Non-Dischargeability of Debts and to Deny Discharge, and grant such further relief as is just and proper under the circumstances.

Respectfully submitted,
**APEX LAW**


/s/ Tyler P. Phillips
**Tyler P. Phillips (P78280)**
Attorney for Debtor
32900 Five Mile Road
Livonia, Michigan 48154
(734) 888-8399
tphillips@apexgrouplaw.com

15