**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN (DETROIT)**

In Re:

Tammie Joy Clark,

Debtor.

Chapter 7
Case No. 26-41512-MAR
Honorable Mark A. Randon

________________________________________________________/

# SUPPLEMENT TO AMENDED MOTION FOR LEAVE TO EXTEND THE TIME TO OBJECT TO DISCHARGE AND FOR LEAVE TO FILE A TARDY OR DELAYED COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBTS AND TO DENY DISCHARGE

NOW COME Creditors, David Kassa, Mary Kassa, Tom Piros a/k/a Tom Crock Erica Crock, Emma DeHerder, William DeHerder, Lyle Masserant, Connie Masserant and Marcie Van Black ("Creditors"), by and through their attorneys, COHEN, LERNER & RABINOVITZ, P.C., and for their supplement to their Amended Motion for Leave to Extend the Time to Object to Discharge (Doc. 21) state as follows:

1. Pursuant to the last hearing before the Court, counsel for the Creditors obtained affidavits from the Creditors to further clarify information that had been presented to the Court in the amended motion.

2. Because each of these Creditors are in far flung locations and could not present themselves in person at counsel's office, all but one are not attested to by a notary public.

3. In the case of Ms. DeHerder, she had affixed her signature to the affidavit in front of a notary.

4. However, as an officer of the Court, counsel indicates to the Court that he received the signed affidavits from each of the Creditors by an email and verily believes that these are accurate statements made to the Court. Should the Court require a re-signature before a notary, one will be obtained.

5. Because Creditors' counsel was in trial just after the last hearing in an Oakland County Circuit Court matter, and the time limit for filing these affidavits was August 19, 2026, the press of time prevented what would have been a fully notarized statement from each of the witnesses here.

WHEREFORE Creditors pray that this Honorable Court accept the affidavits presented as a supplement to the amended motion. Further, Creditors pray that this Honorable Court grant the relief they had originally

requested in the amended motion and allow this matter to proceed before this Court.

Respectfully Submitted,

*/s/ Steven Z. Cohen*

COHEN, LERNER & RABINOVITZ, P.C.
By: Steven Z. Cohen (P29344)
Attorney for Creditors
26862 Woodward Avenue, Suite 200
Royal Oak, MI 48067
(248) 691-2200/(248) 691-2214 Fax

**PROOF OF SERVICE**

The undersigned certifies that on 19th day of August, 2026, he served a copy of the Supplement to Amended Motion for Leave to Extend the Time to Object to Discharge and for Leave to File a Tardy or Delayed Complaint to Determine Non-dischargeability of Debts and to Deny Discharge via counsel and parties of record using the ECF system

*/s/ Steven Z. Cohen*

COHEN, LERNER & RABINOVITZ, P.C.
By: Steven Z. Cohen (P29344)
Attorney for Creditors

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN (DETROIT)**

In Re:

Tammie Joy Clark,

Debtor.

Chapter 7
Case No. 26-41512-MAR
Honorable Mark A. Randon

______________________________________/

## AFFIDAVIT OF EMMA DEHERDER

STATE OF MICHIGAN )
)SS
COUNTY OF OAKLAND )

I, Emma DeHerder, being duly sworn, depose and state as follows:

1. My husband, William Deherder, and I entered into a contract with Ann Arbor Sunrooms LLC d/b/a Four Seasons Sunrooms of Ann Arbor and/or Four Seasons Sunrooms, Kitchen and Bath. That contract was dated June 19, 2025.

2. The company was supposed to perform a construction project for us at our home located at 11688 Fowlerville Road, Fowlerville, Michigan.

3. In addition to an initial deposit of $37,500, my husband and I paid $20,000 more in October of 2025 to start the project.

4. However, in November and December of 2025, Four Seasons advised that the project would require steel instead of the anticipated wood framing which would increase the cost for the project by $46,000.

5. At that time, my husband and I advised Four Seasons that the price increase was not financially feasible.

6. Four Seasons then stated it would return the deposit and all of our payments back to us. When we heard nothing, despite repeated phone calls, we contacted an attorney who wrote a letter to the company. A copy of his letter dated January 15, 2026 is attached to this Affidavit as **Exhibit A**.

7. At the time our attorney wrote the letter, we did not anticipate that we had contracted directly with Tammy Clark or that she was directly involved in fraud.

8. In her original bankruptcy filing, Ms. Clark listed us as "Creditors" at page 7 of 24, but put down the name and address of Mr. English, who was the lawyer who had written our letter in January of 2026.

9. While I ultimately became aware of the bankruptcy, my husband and my home address was certainly not included in the bankruptcy filing despite Ms. Clark's knowledge and the clear statement on the letter from Mr. English that our complaint dealt with our home on Fowlerville Road.

10. Mr. English wrote to us on February 23, 2026 explaining that while a bankruptcy was filed by Ms. Clark on February 13, 2026, he did not do bankruptcy work. In his email to us, he wrote: "Bankruptcy law (for debtors or creditors such as yourself) is a very specific type of law that I am unfamiliar with, so I recommend that if you choose to proceed further against Tammy or her company through litigation, you should consult with a bankruptcy attorney."

11. I reached out to the Michigan State Police and was put in touch with an Trooper DePeel. Trooper DePeel indicated that he was investigating the matter and would be in touch with me as well as with others who had suffered losses as a result of the conduct of Mr. and Mrs. Clark and/or Ann Arbor Sunrooms. Trooper DePeel contacted me on April 27, 2026 and informed me that he was

submitting information to the Livingston County prosecutor. He told me that he was recommending that both Tammy Clark and her husband, Robert Clark, be criminally charged.

12. I began trying to contact bankruptcy lawyers, but without any success.

13. Next, I received notice of others who had been having problems with Ann Arbor Sunrooms because of postings on a website called "Reddit". It was then that I was put in touch with others.

14. Each time I consulted with a bankruptcy lawyer, they indicating that it was confusing as to why Ms. Clark had gone bankrupt herself but that the company had not gone bankrupt nor had her husband, Robert Clark, who had been our original contact person.

15. I was unable to reach a bankruptcy attorney who would undertake our representation until we were referred to Mr. Cohen and the law firm of Cohen, Lerner & Rabinovitz, P.C.

16. Mr. Cohen was initially consulted about bringing suit against Four Seasons Sunrooms, the parent company of Ann Arbor Sunrooms, that operates out of the State of New York.

17. Mr. Cohen explained to me that he does not generally do bankruptcy work and that it was a specialty.

18. Ultimately, out of concern that not moving forward against Ms. Clark might have implications for any lawsuit we might bring against the parent company, he agreed to take on the responsibility of filing the original motion for leave to extend the time to object to discharge and for leave to file a tardy or delayed complaint to determine non-discharge ability of debts and to deny discharge.

19. The original motion and the complaint to determine non-dischargeability of debts and to deny discharge was prepared and filed with this Court on June 8, 2026.

20. I had not met Mr. Cohen about the bankruptcy until June 4, 2026. At that time, I was invited to a Zoom meeting along with Mr. and Mrs. Kassa, Tom Piros, who is also known as Tom Crock, and Lyle Masserant.

21. I did attend the 341 hearing that was conducted by the Bankruptcy Trustee, but I certainly did not have a copy of all of the documents when that meeting took place on March 12, 2026.

22. It is my understanding that Ms. Clark amended her petition to include Tom Piros on March 19, 2026 and that Mr. and Mrs. Kassa were then added by Ms. Clark as creditors on April 7, 2026.

23. From the time of the 341 meeting on March 12, 2026, I consulted with everyone I could, including the state police, to determine how to go forward.

24. The Court's original deadline of May 11, 2026 to file objections to the discharge was only sixty (60) days after the 341 hearing. Still, my husband's and my proper address were never placed in the Court record. The filing by Mr. Cohen on our behalf took place within four days of my meeting him on June 4, 2026. At that, we still have tremendous information to gather so that I can put forward our claim. I still do not have documents from the Debtor or the business that are necessary to move forward against the parent company with full information.

25. Even as I write this affidavit, I had not been aware that other people who are now represented by Cohen, Lerner & Rabinovitz, P.C. had actually paid monies directly to both Mr. Clark and Mrs. Clark. This information would have been necessary for me to make a stronger showing of fraud in the complaint that I am now hoping to file before the Bankruptcy Court.

26. So that the Court will be made aware of my real address, I have attached a copy of the contract that was in place between my

husband and I and Ann Arbor Sunrooms d/b/a Four Seasons Sunrooms of Ann Arbor and Four Season Sunrooms Kitchen and Bath. See **Exhibit B**. It clearly shows the proper address. It also establishes that I never got notice in accordance with what I understand to be the requirements of the Bankruptcy Court. This notwithstanding, I cannot deny that I knew about the bankruptcy at the times I have set forward in this affidavit.

EMMA DEHERDER

Subscribed and sworn to before me
this 19 day of August, 2026.

Notary Public
Livingston County, Michigan
My Commission Expires: 05/17/2030

KYLE ROBESON
NOTARY PUBLIC, STATE OF MICHIGAN
COUNTY OF LIVINGSTON
My Commission Expires May 17, 2030
Acting in the County of Livingston

# EXHIBIT A

**WILLIAMS, KNACK & BURROWS, P.C.**
ATTORNEYS AND COUNSELORS AT LAW

810 E. Grand River Avenue
Brighton, MI 48116
Phone (810) 534-0700 Fax (810) 534-0701

WWW.WKBFIRM.COM

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED, AND EMAIL**

January 15, 2026

Attn: Tammie J. Clark and Robert Clark
Ann Arbor Sunrooms LLC
d/b/a Four Seasons Sunrooms of Ann Arbor
and Four Seasons Sunrooms Kitchen and
Bath
11826 North Main Street
Whitmore Lake, MI 48189

annarborfourseasons@gmail.com
sunroomclark@gmail.com

**Re: Emma and Bill DeHerder; 11688 Fowlerville Rd., Fowlerville, MI 48836; Job # 227534775**

Dear Mr. Clark and Ms. Clark:

My firm represents Emma and Bill DeHerder ("DeHerders") relative to the Contract dated June 19, 2025 under which Ann Arbor Sunrooms LLC d/b/a Four Seasons Sunrooms of Ann Arbor and Four Seasons Sunrooms Kitchen and Bath ("Four Seasons") agreed to perform the construction project for the DeHerders' sunroom at their real property located at 11688 Fowlerville Rd., Fowlerville, MI (the "Project"). Said Contract and the Change Order for the same is enclosed with this letter.

On or about June 19, 2025, my clients signed a Contract with Four Seasons in which the parties agreed that Four Seasons would build a four seasons sunroom for the DeHerders' home. Said Contract and the Change Order for the same is enclosed with this letter. The total cost for the Project, including the Change Order was $139,233.00. Pursuant to the Contract, my clients paid a deposit of $37,500.00.

In October 2025, Four Seasons updated the payment schedule and my clients paid Four Seasons $20,000 to start the Project. In November and December 2025, Four Seasons advised that the Project would require steel instead of the anticipated wood framing, which would cost $46,000 additional funds. My clients advised Four Seasons that the price increase was not financially feasible for them, and Four Seasons stated that it would return my clients' deposits/payments back to them.

Since then, Four Seasons has failed to respond to my clients and have failed to return the $57,500.00 paid by my clients.

Adrienne B. Knack
Attorney
aknack@wkbfirm.com

Andrew C. Burrows
Attorney
aburrows@wkbfirm.com

Jordan G. English
Attorney
jenglish@wkbfirm.com

Timothy L. Williams (1948-2025)
Founding Partner

Given the foregoing, the DeHerders hereby demand the immediate return of their deposits and payments made under the Contract in the full amount of Fifty-Seven Thousand Five Hundred Dollars ($57,500.00) from Four Seasons, which DeHerders would consider a cancellation of the Contract and full and final satisfaction of any of Four Seasons' outstanding obligations to the DeHerders under the Contract. You, Four Seasons, has **fourteen (14) days** from the date of this correspondence to return said amount or otherwise respond by contacting me at my office phone number or email as located on this letterhead to discuss a resolution.

In the event Four Seasons does not comply with this demand within the time frame listed above, the DeHerders will have no choice but to take such further legal action as is necessary to recover their deposits and payments relative to the Project.

Very truly yours,

JORDAN G. ENGLISH

JGE/rb
Enclosures

# EXHIBIT B

FOUR SEASONS SUNROOMS OF ANN ARBOR, LLC.
ANN ARBOR SUNROOM KITCHEN & BATH, LLC.
6055 JACKSON RD.
ANN ARBOR, MI 48103
OFFICE: 734-769-9700 / FAX: 734-769-7858

# CHANGE ORDER

We agree to make the change(s) or perform additional work at the request of:

| | |
|---|---|
| Name: Bill & Emma DeHerder | Job Name: |
| Address: 11688 Fowlerville rd. | 6/19/2025 |
| City: Fowlerville | Home Phone: |
| MI 48836 | Work or Cell: 269-329-9136 |

Hereinafter referred to as owner, work performed at premises set forth above. It is proposed to make the change(s) or perform additional work as follows:

Extend the projection from 22' to 25'. Includes additional floor system And additional post and footings to support the load of the room. Includes also a larger steel beam for the support of the exercise equipment.

Any changes made to original contract may cause delays in projects and/or alter schedule.
All monies are due upon signing of the change order unless specifies below.

| ADDITIONAL PRICE | DEDUCTION IN PRICE | ORIGINAL CONTRACT AMT. |
|---|---|---|
| $ 7,500.00 | | 131,733.00 |

NEW CONTRACT PRICE $ 139,233

| | |
|---|---|
| **Company's Acceptance:** Additional work specified above becomes a part of and is to be performed under the same conditions as the existing contract between Contractor and Owner unless otherwise stipulated. | **Owner's Acceptance:** The foregoing terms, specifications and conditions are satisfactory and are hereby agreed to. You are authorized to perform the work specified. |
| Company Representative: Robert C. [signature]<br>Date of Acceptance: 7-18-25 | Owner: (X)<br>Date of Acceptance: |

BUILD the BEST FOUR SEASONS SUNROOMS Independently Owned & Operated

# Contract

Contract No.________

THIS AGREEMENT made on *Thursday, June 19, 2025* between

*Bill & Emma Deherder* Res: Bus:

E-Mail: *emmadeherder@gmail.com* Fax: Cell: *269-329-9136*

of *11688 Fowlerville Rd.* *Fowlerville* *MI* *48836*

(Street) (City) (State/Prov) (Zip/Postal)

hereinafter called the "Owner" and *Ann Arbor Sunrooms Kitchen & Bath* (an independently owned and operated business licensed to sell Four Seasons Product Line hereinafter called the "Products") located at *6055 Jackson Rd. Suite 1, Ann Arbor, MI, 48103, 734-769-9700* hereinafter called the "Contractor".

WITNESSETH:

The Contractor hereby agrees that it will, for consideration hereinafter mentioned, furnish the following described Products and all labor necessary to install the Products and such Additional Work as listed below at premises located at (hereinafter called the "Premises")

We hereby submit specifications for the following Products:

| System | Model No. | No. Bays | Length | Projection | Height |
|---|---|---|---|---|---|
| *230 Glass Cathedral* | *GR4FT1313* | - | *12' 10"* | *21' 10"* | *17'* |

**ACCESSORIES:**

Left Side:

Right Side:

Glazing:

Roof : *CONSERVAGLASS SELECT™ 16* *Code 78*

Front & Sides : *CONSERVAGLASS SELECT™ 7E* *Code 7E*

Curves :

Panel Type : *Glass Kickpanels/glass transoms*

Color: **Bronze**

Frame : *Bronze*

Panel:

Beams: *Aluminum*

**WINDOWS & DOORS**

| Qty | | Qty | | Qty | Options |
|---|---|---|---|---|---|
| 1 | *6' Door wall leading to the Platform and steps* | | | 9 | *Additional Transoms to increase the height to 15'* |
| 5 | *6'x5' sliding windows* | | | | |

**Heating/Cooling: To be done by a local contractor**

Exhaust Fan:

**ADDITIONAL WORK:** *As Per Scope of Work* **EXCLUSIONS:** *As Per Scope of Work*

**Payment Schedule**

| | |
|---|---|
| Deposit | $28,000 |
| Ship Room in from Corporate | $50,000 |
| Install Glass | $35,000 |
| Completion of the sunroom | $18,733 |

All Taxes are Included

**Contract Amount**

| | |
|---|---|
| Total | $150,008 |
| Deductions | ($11,275) |
| Subtotal | $138,733 |
| **Corporat incentive discount** | **(7,000)** |
| **Net TOTAL** | **$131,733** |

**Electric to code along with the Split Zone unit to be done by local contractors.**

The Contractor is licensed under the License No. 2102205371 as a general contractor where the Premises are located and warrants all labor hereunder for 3 year from the date of substantial completion of installation. **The Owner acknowledges and agrees that the Contractor is an Independently Owned and Operated entity licensed to sell the Four Seasons Product Line and is not an agent or affiliate or Four Seasons Solar Products LLC. The Owner expressly waives any claim against Four Seasons Solar Products LLC. or its affiliates except as may be expressly set forth in written warranties accompanying the products.**

Except for the written warranty on labor set forth above, Contractor makes no other warranty and specifically excludes all warranties express or implied, including but not limited to any implied warranty or merchantability or fitness.

The Owner acknowledges that it has read and understood the conditions on the back of this agreement, all of which are herein incorporated by reference.

This agreement shall be governed and construed in accordance with the laws of the state of Michigan The owner may cancel this agreement at any time within three (3) business days following receipt by the Owner of a duplicate original copy of this agreement. This agreement will only become effective when signed by an authorized office of the Contractor. This agreement will only become effective when signed by an authorized officer of the Contractor. The Owner herby acknowledges receipt of a duplicate original copy of this agreement.

Design Consultant [signature] (X) ________ (Owner)

Authorized Approval. ROBERT CLARK General Manager ________ (Co-Owner)

(Contractor) (Title) ________ Date

BUILD the BEST FOUR SEASONS® SUNROOMS Independently Owned & Operated

# Contract

Contract No_______________

THIS AGREEMENT made on *Thursday, June 19, 2025* between

*Bill & Emma Deherder* Res: Bus:

E-Mail: *emmadeherder@gmail.com* Fax: Cell: *269-329-9136*

of *11688 Fowlerville Rd.* (Street) *Fowlerville* (City) *MI* (State/Prov) *48836* (Zip/Postal)

hereinafter called the "Owner" and *Ann Arbor Sunrooms Kitchen & Bath* (an independently owned and operated business licensed to sell Four Seasons Product Line hereinafter called the "Products") located at *6055 Jackson Rd. Suite 1, Ann Arbor, MI, 48103, 734-769-9700* hereinafter called the "Contractor".

**WITNESSETH:**

The Contractor hereby agrees that it will, for consideration hereinafter mentioned, furnish the following described Products and all labor necessary to install the Products and such Additional Work as listed below at premises located at (hereinafter called the "Premises")

We hereby submit specifications for the following Products:

| System | Model No. | No. Bays | Length | Projection | Height |
|---|---|---|---|---|---|
| *230 Glass Cathedral* | *GR4FT1313* | *-* | *12' 10"* | *21' 10"* | *17'* |

**ACCESSORIES:**

Left Side:

Right Side:

Glazing:

Roof : *CONSERVAGLASS SELECT™ 16* *Code 78*

Front & Sides : *CONSERVAGLASS SELECT™ 7E* *Code 7E*

Curves :

Panel Type : *Glass Kickpanels/glass transoms*

Color:: **Bronze**

Frame : *Bronze*

Panel:

Beams: *Aluminum*

**WINDOWS & DOORS**

| Qty | | Qty | | Qty | Options |
|---|---|---|---|---|---|
| *1* | *6' Door wall leading to the Platform and steps* | | | *9* | *Additional Transoms to increase the height to 15'* |
| *5* | *6'x5' sliding windows* | | | | |

**Heating/Cooling: To be done by a local contractor**

Exhaust Fan:

**ADDITIONAL WORK:** *As Per Scope of Work* **EXCLUSIONS:** *As Per Scope of Work*

| **Payment Schedule** | | **Contract Amount** | |
|---|---|---|---|
| Deposit | $28,000 | Total | $150,008 |
| Start of Project | $20,000 | Deductions | ($11,275) |
| Ship room in from Corprate | $40,000 | Subtotal | $138,733 |
| payment for room install | $32,000 | **Corporat incentive discount** | **(7,000)** |
| Upon Completion | $11,733 | All Taxes are Included | |
| **Electric to code along with the Split Zone unit to be done by local contractors.** | | **Net TOTAL** | **$131,733** |

The Contractor is licensed under the License No. 2102205371 as a general contractor where the Premises are located and warrants all labor hereunder for 3 year from the date of substantial completion of installation. **The Owner acknowledges and agrees that the Contractor is an Independently Owned and Operated entity licensed to sell the Four Seasons Product Line and is not an agent or affiliate or Four Seasons Solar Products LLC. The Owner expressly waives any claim against Four Seasons Solar Products LLC. or its affiliates except as may be expressly set forth in written warranties accompanying the products.**

Except for the written warranty on labor set forth above, Contractor makes no other warranty and specifically excludes all warranties express or implied, including but not limited to any implied warranty or merchantability or fitness.

The Owner acknowledges that it has read and understood the conditions on the back of this agreement, all of which are herein incorporated by reference.

This agreement shall be governed and construed in accordance with the laws of the state of Michigan The owner may cancel this agreement at any time within three (3) business days following receipt by the Owner of a duplicate original copy of this agreement. This agreement will only become effective when signed by an authorized office of the Contractor. This agreement will only become effective when signed by an authorized officer of the Contractor. The Owner herby acknowledges receipt of a duplicate original copy of this agreement.

Design Consultant ____________________ ____________________ (Owner)

Authorized Approval. ____________________ General Manager ____________________ (Co-Owner)

(Contractor) (Title) ____________________ Date

BUILD the BEST
FOUR SEASONS®
SUNROOMS
Independently Owned & Operated

# Contract

Contract No______________

THIS AGREEMENT made on ***Thursday, June 19, 2025*** between

***Bill & Emma Deherder*** Res: Bus:

E-Mail: ***emmadeherder@gmail.com*** Fax: Cell: ***269-329-9136***

of ***11688 Fowlerville Rd.*** (Street) ***Fowlerville*** (City) ***MI*** (State/Prov) ***48836*** (Zip/Postal)

hereinafter called the "Owner" and ***Ann Arbor Sunrooms Kitchen & Bath*** (an independently owned and operated business licensed to sell Four Seasons Product Line hereinafter called the "Products") located at ***6055 Jackson Rd. Suite 1, Ann Arbor, MI, 48103, 734-769-9700*** hereinafter called the "Contractor".

**WITNESSETH:**

The Contractor hereby agrees that it will, for consideration hereinafter mentioned, furnish the following described Products and all labor necessary to install the Products and such Additional Work as listed below at premises located at (hereinafter called the "Premises")

We hereby submit specifications for the following Products:

| System | Model No. | No. Bays | Length | Projection | Height |
|---|---|---|---|---|---|
| ***230 Glass Cathedral*** | ***GR4FT1313*** | ***-*** | ***12' 10"*** | ***21' 10"*** | ***15'*** |

**ACCESSORIES:**

Left Side:

Right Side:

Glazing:
Roof : ***CONSERVAGLASS SELECT™ 16*** ***Code 78***
Front & Sides : ***CONSERVAGLASS SELECT™ 7E*** ***Code 7E***
Curves :
Panel Type : ***Glass Kickpanels/glass transoms***

Color:: **Bronze**
Frame : ***Bronze***
Panel:
Beams: ***Aluminum***

**WINDOWS & DOORS**

| Qty | | Qty | | Qty | Options |
|---|---|---|---|---|---|
| ***1*** | ***6' Door wall leading to the Platform and steps*** | | | ***9*** | ***Additional Transoms to increase the height to 15'*** |
| ***5*** | ***6'x5' sliding windows*** | | | | |

**Heating/Cooling: To be done by a local contractor**

Exhaust Fan:

**ADDITIONAL WORK:** ***As Per Scope of Work*** **EXCLUSIONS:** ***As Per Scope of Work***

| **Payment Schedule** | |
|---|---|
| Deposit | $28,000 |
| Ship Room in from Corporate | $50,000 |
| Install Glass | $35,000 |
| Completion of the sunroom | $18,733 |

All Taxes are Included

| **Contract Amount** | |
|---|---|
| Total | $150,008 |
| Deductions | ($11,275) |
| Subtotal | $138,733 |
| **Corporat incentive discount** | **(7,000)** |
| **Net TOTAL** | **$131,733** |

**Electric to code along with the Split Zone unit to be done by local contractors.**

The Contractor is licensed under the License No. 2102205371 as a general contractor where the Premises are located and warrants all labor hereunder for 3 year from the date of substantial completion of installation. **The Owner acknowledges and agrees that the Contractor is an Independently Owned and Operated entity licensed to sell the Four Seasons Product Line and is not an agent or affiliate or Four Seasons Solar Products LLC. The Owner expressly waives any claim against Four Seasons Solar Products LLC. or its affiliates except as may be expressly set forth in written warranties accompanying the products.**

Except for the written warranty on labor set forth above, Contractor makes no other warranty and specifically excludes all warranties express or implied, including but not limited to any implied warranty or merchantability or fitness.

The Owner acknowledges that it has read and understood the conditions on the back of this agreement, all of which are herein incorporated by reference.

This agreement shall be governed and construed in accordance with the laws of the state of Michigan The owner may cancel this agreement at any time within three (3) business days following receipt by the Owner of a duplicate original copy of this agreement. This agreement will only become effective when signed by an authorized office of the Contractor. This agreement will only become effective when signed by an authorized officer of the Contractor. The Owner herby acknowledges receipt of a duplicate original copy of this agreement.

Design Consultant ______________ ______________ (Owner)

Authorized Approval. ______________ General Manager ______________ (Co-Owner)

(Contractor) (Title) ______________ Date

# *Terms & Conditions*

## Unknown Conditions of the Premises

Owner hereby warrants that he/she has disclosed all known structural or subsoil conditions that could impact on the work to be performed hereunder. In the event Contractor discovers any unforeseen structural or subsoil condition, Contractor shall immediately advise the Owner of discovery and the Owner agrees to pay any additional costs associated with such conditions. Contractor agrees that the charges to be imposed for any such work shall be its usual and customary charges.

## Credit

If credit terms are agreed to between contractor and Owner, Contractor may assign this contract to a financial institution. If the financial institution does not approve Owner's credit, Contractor may cancel this contract without obligation to Owner. If Owner has misrepresented any facts upon which the decision to extend credit was based, Contractor may on ten (10) days' written notice to Owner require payment of the full contract price immediately by cash or certified check, and upon Owner's failure to comply to the provision, Contractor may cease work pursuant to this contract and proceed to enforce its remedies for owner's breach of contract.

## Insurance

Contractor represents that he carries Worker's compensation and Public Liability Insurance and will upon request provide a Certificate of Worker's Compensation Insurance prior to starting work.

## Breach

If the Owner refuses to permit the contractor to proceed with the work hereunder or otherwise breaches any of the terms and conditions hereof, Owner agrees to become liable to the Contractor for any sum that may be proved as damages, which sum shall include Contractor's lost profit, or Contractor if it so elects may retain any amounts paid through the date of the Owner's breach of contract as liquidated damages (and not as a penalty). Contractor agrees that it shall give owner seven (7) days' written notice of an intent to retain liquidated damages.

## Access

Owner represents that he is the Owner of the property on which the work is to be performed or that he is otherwise authorized on behalf of the Owners to enter into this agreement. Owner authorizes Contractor to enter upon the premises, and Owner agrees to obtain, if necessary, consent to enter upon adjoining property, in order to enable the Contractor to perform the work set forth herein.

## Entire Agreement

This contract represents the entire agreement between Owner and Contractor and no representation or warranty shall be binding upon either party unless included herein. This contract may be modified only in a writing signed by both parties and approved by an authorized officer of the Contractor.

## Governing Law

This contract shall be governed by the laws of the State of Michigan, and any dispute arising hereunder shall be resolved exclusively before a single arbitrator and in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

# Scope of Work

Thursday, June 19, 2025

**Prepared for:**

Bill & Emma Deherder
11688 Fowlerville Rd.
Fowlerville, MI 48836

Res:
Bus:
Fax:
Cel: 269-329-9136
E-Mail: emmadeherder@gmail.com

---

***Project:***

To supply and install a Four Seasons sunroom addition on an existing building. Prepare working drawings for addition. Submit to the Building Department a completed Application for Building Permit together with the working drawings and the required fee and obtain the Building Permit.
Sunroom to meet Local Building Code.

Product displays, models, pictures and specifications may not depict actual product. Rooms are subject to variations pursuant to local building codes.

***Credentials & Warranties:***

We are ***Sunroom Specialists*** and only supply and build sunroom additions
We have been in business ***Continuously*** for over 30 years
Network of over 300 locations in 25 countries
More than 250,000 sunrooms built
Over 100 Million square feet of glass installed

***Licensed***
***Liability Insurance Coverage***
***Full Workers' Compensation Coverage***
***Member of the Better Business Bureau***

***Lifetime Limited Glass Seal Failure Transferable Warranty***
***Lifetime Limited Glass Breakage Transferable Warranty***
***100% Coverage for 20 Years***
***10 Year Limited Product Warranty***

***3 Year Workmanship Warranty***
***Non-Four Seasons Products are as per Manufacturers Warranties***

***Sunroom Specifications:***

***Model GR4FT1313***

***Series 230 Sun & Stars Cathedral Room***

unit to be straight eaves back-to-back cathedral model
unit will have integral double drainage system to channel any moisture outside
glazing bars to be extruded aluminum for beauty and strength
all aluminum to be fully thermally broken to prevent cold transfer
integral shading track to be in all roof beams to allow for shades
only marine grade Stainless Steel Fasteners to prevent rust and staining
all glass sandwiched between EPDM gaskets to allow expansion & contraction
3" extruded aluminum framework with **Glass Kickpanels**
frame paint finish to be **Bronze** Baked-On enamel for long-lasting beauty
all glass to be fully tempered for your security and safety
all high quality **Aluminum** windows with screens and security locks

***Approximate Sunroom Size:***

12' 10" long 21' 10" projection 15' high

***Roof Glazing:***

CONSERVA**GLASS SELECT**™ **(MC-16)**

***Exclusive High Performance Glazing***

Multi-coat glazing technology (Code 78)
Easy-Clean II Exterior Coating + Stay-Clean Technology
Argon Gas filled for better insulation
90% reduction in Total Solar Transmittance
High Visible Transmittance
R4.0 / U0.25 center of glass insulation value
Stainless steel continuous bent spacers
Dual poly-isobutylene and silicone seals
Fully tempered insulated safety glass
Protective Glass Masking

***Vertical Glazing:***

CONSERVA**GLASS SELECT**™ **(MC-7E)**

***Exclusive High Performance Glazing***

Multi-coat glazing technology (Code 7E)
Easy-Clean II Exterior Coating + Stay-Clean Technology
Argon Gas filled for better insulation
75% reduction in Total Solar Transmittance
High Visible Transmittance
R4.0 / U0.25 center of glass insulation value
Stainless steel continuous bent spacers
Dual poly-isobutylene and silicone seals
Fully tempered insulated safety glass
Protective Glass Masking

| | |
|---|---|
| ***Foundation:*** | Hand dig holes 3'6" deep 16" in diameter<br>Pour holes to within 6" below grade<br>includes Simpson brackets and 6"x6" treated post. |
| ***Floors:*** | 2x12 joist 16" O.C. Ledger at house. 3/8" Smartside underside closed cell foam insulation. 3/4" T&G Advantech plywood for 50 year moisture resistance. |
| ***Base Walls / Walls:*** | Supply and install 1/2" drywall to the house wall. Taped sanded and paint. |
| ***Tear Downs:*** | **Remove complete deck including surface and framing & Haul away all debris** |
| ***Miscellaneous:*** | **Additional transoms for Height at the ridge**<br>**Fill in with a 7' Doorwall under the existing roof.**<br>**Build a 7'x3' platform and 4'steps outside of the doorwall.** |

***Also Includes:***

Architectural Drawings & Building Permit are included.

All aspects of installation, flashing & caulking.

Engineering by Four Seasons Sunrooms.
Repair any damage done to existing building caused by Four Seasons Sunrooms or it's contractors.
Leave area broom clean at the end of each work day.
Remove all construction debris from site at the completion of project.

***Project Notes:***

**Use a 2x4 GlueLam beam or steel at the ridge to give the ablity to carry the weight of the customers exersize unit.**

**UNIT TO BE INSTALLED BEFORE CHRISTMAS OF 2025!!!**

# Options

***Project Notes:***

***Exclusions:***

Except as specified above, the following items are **not** included in this quotation:

Any additional permits or fees such as listed below, except as noted above
- Committee of Adjustments
- Site Plan Control
- Conservation Authority Approval
- Curb Deposit
- Plumbing Permit

Any items listed in Options, marked By Others or not listed above
All final painting and decorating
Heating, Cooling & Electrical, except as noted above
Floor covering
Landscaping
Decks, skirt to grade and /or stairs, except as noted above

Any additions to the above will be charged at current Four Seasons prices. No additional work is to commence without a signed Change Order form.

**The Owner acknowledges and agrees that the Contractor is an Independently Owned and Operated entity licensed to sell the Four Seasons Product Line and is not an agent or affiliate or Four Seasons Solar Products LLC. The Owner expressly waives any claim against Four Seasons Solar Products LLC. or its affiliates except as may be expressly set forth in written warranties accompanying the products.**

Owner ______________________________ Date ______________

Consultant ____________________________________________

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN (DETROIT)**

In Re:

Tammie Joy Clark,

Debtor.

Chapter 7
Case No. 26-41512-MAR
Honorable Mark A. Randon

______________________________________/

## AFFIDAVIT OF DAVID KASSA

STATE OF MICHIGAN )
)SS
COUNTY OF OAKLAND )

I, David Kassa, being duly sworn, depose and state as follows:

1. I entered into a contract with Ann Arbor Sunrooms LLC d/b/a Four Seasons Sunrooms of Ann Arbor and/or Four Seasons Sunrooms, Kitchen and Bath. That contract was dated July 17, 2024.

2. The contract required my wife and I to pay $114,927 in exchange for Ann Arbor Sunrooms Kitchen and Bath to construct an extra room to our house. The contract specifically identified my home address as 7525 Autumn Hill Drive, West Bloomfield, Michigan 48323.

3. My wife and I made a $31,000 deposit pursuant to the contract and then, ultimately, paid a total of $99,979.67.

4. However, Four Seasons never performed the work or completed the project.

5. When my wife and I were informed by Ms. Clark that there were difficulties in completing the project, I then contacted the national organization known as Four Season Solar Products LLC located in New York.

6. During the course of my dealings with Ms. Clark, herself, I indicated to her that the national organization had agreed to provide all of the sunroom equipment in an attempt to allow us to mitigate our damages.

7. Regrettably, the national organization then sent the sunroom products to Ms. Clark's location who then failed to turn over the entirety of the product to us so that we could complete the project with a different contractor.

8. In Ms. Clark's original filings with the Bankruptcy Court, neither me nor my wife were included on the list of creditors.

9. While I ultimately became aware of the bankruptcy, my home address was certainly not included in Ms. Clark's amended bankruptcy filing despite Ms. Clark's knowledge of that address. Instead, she listed it as "Autumn Drive" not Autumn Hill Drive.

10. Even after Ms. Clark attempted to amend her list of creditors to include my wife and I on April 7, 2026.

11. In an attempt to find out about Mr. and Mrs. Clark and the company that we had contracted with, my wife posted to social media. It was at that time that I became aware of Mr. and Mrs. DeHerder, Tom Piros, Mr. and Mrs. Masserant and Marcy Van Black.

12. While I didn't contact the Michigan State Police, we did receive contact from an investigator with the Michigan State Police as a result of Ms. DeHerder contacting them.

13. I tried contacting bankruptcy lawyers, but had no success.

14. Just before the 341 hearing took place on March 12, 2026, I attended a Zoom meeting with the other people who are now involved in this motion.

15. Initially, I contacted a family member who was a lawyer but he advised that he did not do this type of work.

16. Ultimately, I contacted a friend who was in the landscaping and design business who recommended me to Cohen, Lerner & Rabinovitz, P.C. and Steven Z. Cohen.

17. I initially consulted with Mr. Cohen about bringing a claim against my credit card company for allowing a charge to go through to Ann Arbor Sunrooms.

18. After Mr. Cohen received a letter from Barclays denying our claim, I then spoke to him about the problems that I was having with Ann Arbor Sunrooms on an overall basis. On June 2, 2026, Mr. Cohen made an inquiry on our behalf to an attorney named Hubert Plummer, who was the attorney for Four Seasons Solar Products LLC in New York. On June 3, 2026, I spoke with Mr. Cohen and we scheduled a Zoom meeting for June 4, 2026.

19. At the meeting on June 4, 2026, Mr. Cohen explained to me that he does not generally do bankruptcy work and that it was a specialty that his firm did not pursue.

20. However, ultimately, out of concern that not moving forward against Ms. Clark might have implications for any lawsuit that we might bring against the parent company, he agreed to take on the responsibility of filing a motion for leave to extend the time to object to discharge and for leave to file a tardy or delayed complaint to determine non-dischargeability of debts and to deny the discharge.

21. While I spoke to Mr. Cohen by telephone on what I believe was June 3, 2026, I did not meet with him on the bankruptcy issue until the Zoom call that took place on June 4, 2026. I arranged for

others to participate in the Zoom meeting. Those others included Tom Piros, who is also known as Tom Crock, Lyle Masserant and Emma DeHerder.

22. The original motion and complaint to determine non-dischargeability of debts and to deny discharge was prepared and filed by Mr. Cohen's office with this Court on or about June 8, 2026.

23. Although I attended the 341 hearing that was conducted by the Bankruptcy Trustee, I certainly did not speak at the meeting nor did I have a copy of all of the necessary documents when that meeting took place on March 12, 2026.

24. From the time of the 341 meeting on March 12, 2026, I consulted with everyone I could, including the state police, to determine how to go forward.

25. The Court's original deadline of May 11, 2026 to file objections to the discharge was only sixty (60) days after the 341 hearing. Still, our address has never been placed in the Court record. The filing by Mr. Cohen on our behalf took place within four days of my meeting him on June 4, 2026. My wife and I still have tremendous information to gather so that I can finalize the necessary proofs for the claim in the Bankruptcy Court and as against the parent company. I still do not have all of the documents from the Debtor or the Ann Arbor Sunrooms LLC d/b/a Four Seasons Sunrooms of Ann Arbor necessary to be able to complete my proofs in final form.

Further Deponent sayeth not.

DAVID KASSA

Subscribed and sworn to before me
this day of August, 2026.

Notary Public
County, Michigan

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN (DETROIT)**

In Re:

Tammie Joy Clark,

Debtor.

Chapter 7
Case No. 26-41512-MAR
Honorable Mark A. Randon

_______________________________________________/

## AFFIDAVIT OF MARY KASSA

STATE OF MICHIGAN )
)SS
COUNTY OF OAKLAND )

I, Mary Kassa, being duly sworn, depose and state as follows:

1. I entered into a contract with Ann Arbor Sunrooms LLC d/b/a Four Seasons Sunrooms of Ann Arbor and/or Four Seasons Sunrooms, Kitchen and Bath. That contract was dated July 17, 2024.

2. The contract required my husband and I to pay $114,927 in exchange for Ann Arbor Sunrooms Kitchen and Bath to construct an extra room to our house. The contract specifically identified my home address as 7525 Autumn Hill Drive, West Bloomfield, Michigan 48323.

3. My husband and I made a $31,000 deposit pursuant to the contract and then, ultimately, paid a total of $99,979.67.

4. However, Four Seasons never performed the work or completed the project.

5. When my husband and I were informed by Ms. Clark that there were difficulties in completing the project, I then contacted the national organization known as Four Season Solar Products LLC located in New York.

6. During the course of my dealings with Ms. Clark, herself, I indicated to her that the national organization had agreed to provide all of the sunroom equipment in an attempt to allow us to mitigate our damages.

7. Regrettably, the national organization then sent the sunroom products to Ms. Clark's location who then failed to turn over the entirety of the product to US so that we could complete the project with a different contractor.

8. In Ms. Clark's original filings with the Bankruptcy Court, neither me nor my husband were included on the list of creditors.

9. While I ultimately became aware of the bankruptcy, my home address was certainly not included in Ms. Clark's amended bankruptcy filing despite Ms. Clark's knowledge of that address. Instead, she listed it as "Autumn Drive" not Autumn Hill Drive.

10. Ms. Clark attempted to amend her list of creditors to include my husband and I on April 7, 2026.

11. In an attempt to find out about Mr. and Mrs. Clark and the company that we had contracted with, I posted to social media. It was at that time that I became aware of Mr. and Mrs. DeHerder, Tom Piros, Mr. and Mrs. Masserant and Marcy Van Black.

12. While I didn't contact the Michigan State Police myself, I did receive contact from an investigator with the Michigan State Police as a result of Ms. DeHerder contacting them.

13. I tried contacting bankruptcy lawyers, but had no success.

14. Initially, I contacted a family member who was a lawyer but he advised that he did not do this type of work.

15. Ultimately, I contacted a friend who was in the landscaping and design business who recommended me to Cohen, Lerner & Rabinovitz, P.C. and Steven Z. Cohen.

16. I initially consulted with Mr. Cohen about bringing a claim against my credit card company for allowing a charge to go through to Ann Arbor Sunrooms.

17. After Mr. Cohen received a letter from Barclays denying our claim, I then spoke to him about the problems that I was having with Ann Arbor Sunrooms on an overall basis. On June 2, 2026, Mr. Cohen made an inquiry on our behalf to an attorney named Hubert Plummer, who was the attorney for Four Seasons Solar Products LLC in New York. On June 3, 2026, I spoke with Mr. Cohen and we scheduled a Zoom meeting for June 4, 2026.

18. After Mr. Cohen received a letter from Barclays denying our claim, I then spoke to him about the problems that I was having with Ann Arbor Sunrooms on an overall basis. On June 2, 2026, Mr. Cohen made an inquiry on our behalf to an attorney named Hubert Plumber, who was the attorney for Four Seasons Solar Products LLC in New York. On June 3, 2026, I spoke with Mr. Cohen and we schedule a Zoom meeting for June 4, 2026.

19. At the meeting on June 4, 2026, Mr. Cohen explained to me that he does not generally do bankruptcy work and that it was a specialty that his firm did not pursue.

20. However, ultimately, out of concern that not moving forward against Ms. Clark might have implications for any lawsuit that we might bring against the parent company, he agreed to take on the responsibility of filing a motion for leave to extend the time to object to discharge and for leave to file a tardy or delayed complaint to determine non-dischargeability of debts and to deny the discharge.

21. While I spoke to Mr. Cohen by telephone on what I believe was June 2, 2026, I did not meet with him on the bankruptcy issue until the Zoom call that took place on June 4, 2026. I arranged for others to participate in the Zoom meeting. Those others included Tom Piros, who is also known as Tom Crock, Lyle Masserant and Emma DeHerder.

22. The original motion and complaint to determine non-dischargeability of debts and to deny discharge was prepared and filed by Mr. Cohen's office with this Court on or about June 8, 2026.

23. The Court's original deadline of May 11, 2026 to file objections to the discharge was only sixty (60) days after the 341 hearing. Still, our address has never been placed in the Court record. The filing by Mr. Cohen on our behalf took place within four days of my meeting him on June 4, 2026. I still have tremendous information to gather so that I can finalize the necessary proofs for the claim and in Bankruptcy Court and as against the parent company. I still do not have all of the documents from the Debtor or the Ann Arbor Sunrooms LLC d/b/a Four Seasons Sunrooms of Ann Arbor necessary to be able to complete my proofs in final form.

Further Deponent sayeth not.

Mary Kassa
MARY KASSA

Subscribed and sworn to before me
this day of August, 2026.

______________________________
Notary Public
County, Michigan
My Commission Expires:

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN (DETROIT)**

In Re:

Tammie Joy Clark,

Debtor.

Chapter 7
Case No. 26-41512-MAR
Honorable Mark A. Randon

______________________________________________/

## AFFIDAVIT OF LYLE MASSERANT

STATE OF MICHIGAN )
)SS
COUNTY OF OAKLAND )

I, Lyle Masserant, being duly sworn, depose and state as follows:

1. My wife Connie and I entered into a contract with Ann Arbor Sunrooms LLC d/b/a Four Seasons Sunrooms of Ann Arbor and/or Four Seasons Sunrooms, Kitchen and Bath. That contract was dated September 11, 2024.

2. The company was supposed to perform the installation of a four season series 230 glass cathedral sunroom for a total price of $69,000 at our home located at 8620 Chinavare Road, Newport, Michigan 48166.

3. On the day the contract was signed, I paid an initial deposit and then made additional payments later in September of 2024 and November of 2024 such that a total of $50,000 had been paid on the $69,000 contract.

4. Despite making those payments, neither Ann Arbor Sunrooms LLC nor Robert C. Clark or Tammy J. Clark came close to completing the work. Instead, they requested additional funds

that were not originally contracted for and refused to return my deposit money.

5. On December 10, 2025 after having received no responses to my many phone calls and inquiries, I had attorney Brittnay Braunlich write a letter on behalf of my wife and myself seeking the return of our money. A copy of that letter dated December 10, 2025 is attached to this affidavit as **Exhibit A**.

6. In her original bankruptcy filing, Ms. Clark listed my wife and myself as creditors, but put down the name and address of Ms. Braunlich, who was the lawyer who had written our letter in December of 2025.

7. While my wife and I ultimately became aware of the bankruptcy, our home address was certainly not included in the bankruptcy filing despite Ms. Clark's knowledge of our address and the clear statement on the letter from Ms. Braunlich that our complaint dealt with our home on Chinavare Road.

8. However, Ms. Braunlich does not do bankruptcy work.

9. I reached out to others on the "Reddit" platform and was in touch with Mr. and Mrs. Kassa, Mr. and Mrs. DeHerder and Tom Piros.

10. Through that contact, I became aware that Emma DeHerder had tried to reach a person at the state police to investigate her transaction for criminal fraud.

11. As a result of my contacts on Reddit, I received notice of others who had been having problems with Ann Arbor Sunrooms.

12. I don't know whether or not I was part of a Facebook group, but I do recall having been in a Zoom meeting on March 11, 2026 where I met Tom Piros, the Kassas and Marcy Van Black.

13. I was unable to obtain a bankruptcy lawyer despite having tried a number of law firms. Each bankruptcy lawyer quoted fees that

were greatly out of my ability to pay and none held out much hope that I would ever be able to recover anything based on our telephone conversations.

14. Ultimately, I was put in touch with Steven Z. Cohen and the law firm of Cohen, Lerner & Rabinovitz, P.C. as a result of a suggestion by Mr. and Mrs. Kassa.

15. Mr. Cohen had been consulted about bringing suit against the parent company of Ann Arbor Sunrooms that operates out of the State of New York.

16. Mr. Cohen explained to me, as well as the others, that he does not generally do bankruptcy work and that bankruptcy was a specialty.

17. However, out of concern that not moving forward against Ms. Clark might have implications for any lawsuit we might bring against the parent company, he agreed to take on the responsibility of filing a motion for leave to extend the time to object to discharge and for leave to file a tardy or delayed complaint to determine non-dischargeability of debts and to deny discharge.

18. Mr. Cohen filed an original motion and complaint to determine non-dischargeability of debts and to deny the discharge on or about June 8, 2026.

19. I had not met with Mr. Cohen about the bankruptcy issue until June 4, 2026. At that time, I was invited to a Zoom meeting along with Mr. and Mrs. Kassa, Tom Piros, who is also known as Tom Crock, and Emma DeHerder.

20. I did attend the 341 hearing that was conducted by the Bankruptcy Trustee, but I certainly did not have a copy of all of the documents when that meeting took place on March 12, 2026.

21. It is my understanding that Ms. Clark amended her petition to

include Tom Piros on March 19, 2026 and that Mr. and Mrs. Kassa were then added by Ms. Clark as creditors on April 7, 2026.

22. From the time of the 341 meeting on March 12, 2026, I consulted with everyone I could to determine how to go forward.

23. The Court's original deadline of May 11, 2026 to file objections to the discharge was only sixty (60) days after the 341 hearing. Still, my address and my wife's address were never placed in the Court record as was required of Ms. Clark. The filing by Mr. Cohen on our behalf took place within four days of my meeting with him on June 4, 2026. At that, I still had information to gather so that I could put forward our claim. In fact, I am still gathering information for him to this date. I still do not have all of the documents from the Debtor or the Debtor's business that are necessary to move forward against the parent company or her with full information.

24. Although it does not bear on my conduct, I have been shown documents that a certificate of Ms. Clark with respect to the bankruptcy education requirement was not achieved by her until May 6, 2026, just five days before the deadline for opposing her discharge.

LYLE MASSERANT

Subscribed and sworn to before me
this day of August, 2026.

Notary Public
County, Michigan
My Commission Expires:

# EXHIBIT A

# BRAUNLICH LAW OFFICES, PLC

ATTORNEYS & COUNSELLORS

**Brittany Braunlich**
**Paul E. Braunlich** (1931-2016)

THE BRAUNLICH BUILDING
19 East First Street – 2nd Floor
Monroe, Michigan 48161

Telephone: (734) 242-6363
attorney@braunlichlaw.com


December 10, 2025

Robert C. Clark and Tammie J. Clark
Ann Arbor Sunrooms LLC
6055 Jackson Road, Suite 1
Ann Arbor, Michigan 48103

Robert C. Clark and Tammie J. Clark
Ann Arbor Sunrooms LLC
11826 North Main Street / P.O. Box 307
Whitmore Lake, Michigan 48189

Re: Four Seasons Series 230 Glass Cathedral Sunroom
8620 Chinavare Road, Newport, Michigan 48166

Dear Mr. and Mrs. Clark:

Please be advised that this office has been retained by Lyle and Connie Masserant regarding the work you contracted to perform at their home located at 8620 Chinavare Road, Newport, Michigan 48166. Please direct any further communications of this matter directly to my attention:

Braunlich Law Offices, PLC
Brittany Braunlich, Esq.
19 E. First Street
Monroe, Michigan 48161
Phone: (734) 242-6363
Email: attorney@braunlichlaw.com

As you may recall, you entered into a Contract with Lyle and Connie Masserant on September 11, 2024 in which you agreed to furnish a Four Seasons Series 230 Glass Cathedral Sunroom including all labor and additional work agreed upon for the total price of $69,000.00. You collected a deposit on the day the Contract was signed as well as additional payments in September and November 2024 from Mr. and Mrs. Masserant totaling $50,000.00 and you have failed to not only complete the work contracted for by installing the Sunroom, but you have requested additional funds that were never originally contracted for and have now fraudulently retained the total money received and illegally converted it to your own use.

Mr. and Mrs. Masserant have given you many opportunities to complete the work, but you have failed to uphold your end of the contract. If this matter is not promptly resolved by returning the entire $50,000.00 paid, or promptly installing the Four Seasons Series 230 Glass Cathedral Sunroom that was contracted for and promised within the net total of $69,000.00, and if my clients have to file suit, they will seek the full compensatory damages they are due as well as attorney fees.

To this end, I would appreciate your prompt attention and immediate resolution this matter. I shall calendar this matter for review in fourteen (14) days. If either payment is not received in full in a timely manner or the Sunroom contracted for is not promptly received and installed, no later than 14 days from the date of this letter, we will take all legal action necessary to remedy the situation. You may contact my office at (734) 242-6363 if you have any questions. Thank you for immediate attention to this matter. Please be guided accordingly.

Sincerely,

Brittany Braunlich

Brittany Braunlich
Attorney at Law

BB/ked

Gmail

Brittany Braunlich <bbraunlichlaw@gmail.com>

## Masserant

**Brittany Braunlich** <bbraunlichlaw@gmail.com> Wed, Jan 7, 2026 at 2:56 PM
To: Tammie Clark <annarborfourseasons@gmail.com>

Good Afternoon Ms. Clark,

I have not heard from your attorney. Please have your attorney contact me this week to discuss this matter further, or my client has directed our office to pursue legal action.

Thank you,
Brittany Braunlich

On Tue, Dec 23, 2025 at 12:29 PM Brittany Braunlich <bbraunlichlaw@gmail.com> wrote:

> Good Afternoon:
>
> We are in receipt of your email. Please have your attorney contact our office no later than January 6 to discuss this matter.
>
> Thank you.
>
> Brittany Braunlich
> Attorney at Law
>
> On Sat, Dec 20, 2025 at 12:19 PM Tammie Clark <annarborfourseasons@gmail.com> wrote:
>
> > Dear Brittany:
> >
> > I received your paperwork in regard to Masserant in Newport and our past company, Ann Arbor Sunrooms. I have forwarded this to our attorney, Tyler Phillips of Apex Law. Unfortunately Tyler is out of town to spend time with his family for the holidays and won't be table to respond to you until he returns.
> >
> > Thank you,
> >
> > *Tammie*
> >
> > Tammie J Clark
> >
> > "Kindness is never wasted. It always makes a difference" -
> > *Barbara De Angelis*

--
*Braunlich Law Offices, PLC*
*19 East First Street*
*Monroe, Michigan 48161*
*(734) 242-6363*

This Internet message may contain information that is privileged, confidential, and exempt from disclosure. It is intended for use only by the person to whom it is addressed. If you have received this in error, please (1) do not forward or use this information in any way; and (2) contact me immediately. Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.
To comply with U.S. Treasury regulations, we advise you that any discussion of Federal tax issues in this communication was not intended or written to be used, and cannot be used, by any person (i) for the purpose of avoiding penalties that may be imposed by the Internal Revenue Service, or (ii) to promote, market or recommend to another party any matter addressed herein.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN (DETROIT)**

In Re:

Tammie Joy Clark,

Debtor.

Chapter 7
Case No. 26-41512-MAR
Honorable Mark A. Randon

/

## AFFIDAVIT OF TOM PIROS

STATE OF MICHIGAN )
)SS
COUNTY OF OAKLAND )

I, Tom Piros, a/k/a Tom Crock, being duly sworn, depose and state as follows:

1. Erica Crock and I entered into a contract with Four Seasons Sunrooms on August 28, 2024.

2. The company was supposed to perform a construction project for us at our home located at 3851 Trumbull, Trenton, Michigan 48183.

3. The contract required the payment of an initial deposit of $30,000 and total payments of $70,000.

4. We ultimately paid the Defendant and her company and/or her husband a total of $70,000.

5. However, Four Seasons never performed the work that was required to complete the project.

6. I attended the 341 hearing in the Bankruptcy Court.

7. At approximately 11:00 a.m. on March 12, 2026, I emailed the US Trustee to try and discuss the case. In response, the Trustee wrote:

> "It sounds like the rest of the group might all be in contact with each other. Is that correct? I would suggest we possibly all speak together, and we can arrange a meeting or conference call to possibly do that."
>
> I replied:
>
> "There are eight of us currently in a Facebook group. Last night we did a Zoom meeting to go over things. We could do that again. Probably have to work around your schedule."

In response, the US Trustee wrote on March 13, 2026:

> "Great, thanks. I spoke with her attorney after the hearing yesterday, they are going to file amendments in the next week or so to the schedules and disclose some of these things like creditors and the storage unit they should have in the first place, and after that, I will probably be asking them for documents. It might make sense for me to talk with you all after those amendments are made so possibly the week of the 23rd.
>
> I would advise you all to consider seeking bankruptcy counsel, even pulling together to do so. I represent the US Trustee, who polices fraud and abuse in the bankruptcy system, but I cannot represent your individualized interests."

8. After I tried reaching Mr. Cowley again, he wrote back on March 17, 2026:

"Is this something we can discuss by email? Today is a relatively business day and there isn't a ton on my end to do until they make the amendments they need to make. I am not your attorney and I cannot give you legal advice or represent your interest - beyond telling you that you and the others have legal rights in these proceedings and you should speak to someone, even collectively between all of you, about pursuing those rights."

9. After receiving that information, I wrote again to Mr. Cowley on April 27, 2026, I wrote as follows:

"Hi Sean, here is our deal now. No lawyer will take our case except one who wants $50,000 down. Every single one of us has spoken to lawyer after lawyer. So now the only option that we know of is to go at it pro se. I'm not asking any legal advice, but can you tell me is this just going to be another waste of time. I still cannot believe she was able to lie during the 341 meeting and we all proved that she lied, what's the point of pursuing anything."

10. I understand that Lyle Masserant also tried contacting Mr. Cowley on March 16, 2026, indicating that Four Seasons Sunrooms had scanned him out of $50,000 of his retirement money. Apparently Mr. Cowley wrote back on March 17, 2026 indicating that:

"I am not your attorney, and I cannot give you legal advice or represent your interests - beyond telling you that you and the others have legal rights in these proceedings and you should speak to someone, even collectively between all of you, about pursuing those rights.

. . .

As the case progresses, I may reach out to you as a witness, but again, you and the others (it sounds like

you might be aware of each other generally) should look into having someone represent you - possibly even collectively rather then separately."

11. I was unable to reach a bankruptcy attorney who would undertake our representation.

12. Ultimately, I was referred to Mr. Cohen and the law firm of Cohen, Lerner & Rabinovitz, P.C.

13. Initially, Mr. Cohen had been consulted about bringing suit against the parent company that operates out of the State of New York.

14. Mr. Cohen explained to me that he does not generally do bankruptcy work and that it was a specialty his firm did not engage in.

15. However, ultimately, out of concern that not moving forward against Ms. Clark might have implications for any lawsuit we might bring against the parent company, he agreed to take on the responsibility of filing the original motion for leave to extend the time to object to discharge and for leave to file a tardy or delayed complaint to determine non-dischargeability of debts and to deny discharge.

16. The original motion and the complaint to determine non-dischargeability of debts and to deny discharge was prepared and filed with this Court on June 8, 2026.

17. I had not even met Mr. Cohen about the bankruptcy until June 4, 2026. At that time, I was invited to a Zoom meeting along with Mr. and Mrs. Kassa, Mr. Masserant and Emma DeHerder.

18. From the time of the 341 meeting on March 12, 2026, I consulted with everyone I could to determine how to go forward.

19. The Court's original deadline of May 11, 2026 to file objections to the discharge was only sixty (60) days after the 341 hearing. The

filing on my behalf by Mr. Cohen took place within four days of my meeting him on June 4, 2026. At that, I still have tremendous information to gather so that I can perfect my claim against Ms. Clark, her husband and the national company. I still do not have documents from the Debtor or her business that may be necessary to move forward.

Further Deponent sayeth not.

TOM PIROS

Subscribed and sworn to before me
this      day of August, 2026.

Notary Public
County, Michigan
My Commission Expires:

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN (DETROIT)**

In Re:

Tammie Joy Clark,

Debtor.

Chapter 7
Case No. 26-41512-MAR
Honorable Mark A. Randon

______________________________________________/

## AFFIDAVIT OF MARCIE VAN BLACK

STATE OF MICHIGAN )
)SS
COUNTY OF OAKLAND )

I, Marcie Van Black, being duly sworn, depose and state as follows:

1. I entered into a contract with Ann Arbor Sunrooms LLC d/b/a Four Seasons Sunrooms of Ann Arbor and/or Four Seasons Sunrooms, Kitchen and Bath. That contract was dated June 21, 2023.

2. The company was supposed to perform a construction project for us at my home located at 397 West River Street, Deerfield, Michigan 49238.

3. In addition to an initial deposit of $10,000 that I made on June 15, 2023, I paid an additional $10,000 payment on December 4, 2023.

4. Despite promises that the work would be done, no work was performed, leaving me with a project that was not completed.

5. Despite my requests for the return of my money, I heard nothing.

6. At the time that I entered into the agreement, I could not have anticipated that Tammy Clark was the only person I was dealing with inasmuch as my contract identified the company and was also signed by her husband, Robert Clark, who I was told did the construction work itself.

7. In her original bankruptcy filing, Ms. Clark listed me as a "Creditor". However, she listed my address under the name of Joseph W. Uhl, who was an attorney at the Navarro Law Group in Troy, Michigan. Mr. Uhl is my cousin and he had written a demand for the return of my deposit.

8. While I ultimately became aware of the bankruptcy, my home address was certainly not included in the bankruptcy filing despite Ms. Clark's knowledge and the clear statement on the letter from Mr. Uhl that my complaint dealt with my home located on West River Street in Deerfield, Michigan.

9. Mr. Uhl could not continue to represent me for two reasons. First, his law firm did not permit him to do the type of work that was involved and, second, he had no experience in bankruptcy law whatsoever.

10. I received information about others who had been having problems with Ann Arbor Sunrooms. However, before I consulted with anyone else, I called the Michigan State Police to ask for an investigation of these people and their company.

11. While I don't know what the current status of the Michigan State Police investigation is, I am of the belief that they are still looking into this matter.

12. The first time that I met with Mr. and Mrs. Kassa, Emma DeHerder, Mr. Masserant and Mr. Piros, was in a Zoom meeting that took place on March 11, 2026.

13. My facts were a great deal different than the others. I had lost $20,000 while others had lost a great deal more.

14. Ultimately, I was made aware of the law firm of Cohen, Lerner & Rabinovitz, P.C. as a result of contact with Mr. and Mrs. Kassa.

15. As I understood it, Mr. Cohen had been consulted about bringing suit against the parent company of Ann Arbor Sunrooms, that operates out of the State of New York.

16. Mr. Cohen explained to me that his firm does not generally do bankruptcy work and that bankruptcy work was a specialty.

17. However, he indicated that out of concern that not moving forward against Ms. Clark might have implications for any lawsuit that might be brought against the parent company, he agreed to take on the responsibility of filing an amended motion for leave to extend the time periods so that an objection to the discharge and a tardy or delayed complaint to determine non-dischargeability of debts.

18. However, my proper address has never been put into the bankruptcy filing by Tammy Joy Clark.

19. I had not even met Mr. Cohen or anybody from his law firm until Monday, June 15, 2026.

20. I did attend the 341 hearing by the Bankruptcy Trustee. But, I certainly did not speak at the meeting nor did I have a copy of all of the documents when that meeting took place on March 12, 2026.

21. It is my understanding that Ms. Clark amended her petition to include Tom Piros on March 19, 2026 and that Mr. and Mrs. Kassa were then added by Ms. Clark as creditors on April 7, 2026.

22. From the time of the 341 hearing on March 12, 2026, I had consulted with everyone I could, including the state police, to determine how to go forward.

23. The Court's original deadline of May 11, 2026 to file objections to the discharge was only sixty (60) days after the 341 hearing. Still, my proper address was never placed in the Court record. The filing by Mr. Cohen on my behalf took place within one day of my speaking with him. At that time, I still had not gathered all of the information that I ultimately need to give him in support of my claims against the parent company and Ms. Clark. The information I have regarding Ms. Clark's involvement will need to be supplemented with additional documents that I never received from the Debtor or her business.

Marcie Van Black

MARCIE VAN BLACK

Subscribed and sworn to before me
this      day of August, 2026.

Notary Public
County, Michigan
My Commission Expires:

**Signature:** [signature]
Marcie Van Black (Aug 19, 2026 14:51:22 EDT)
**Email:** chefmarcie@hotmail.com