**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN (DETROIT)**

| | |
|---|---|
| In Re:<br><br>Tammie Joy Clark,<br><br>Debtor. | Chapter 7<br>Case No. 26-41512-MAR<br>Honorable Mark A. Randon |

# DEBTOR'S SUR-REPLY IN OPPOSITION TO CREDITORS' AMENDED MOTION FOR LEAVE

## INTRODUCTION

The reply and supplement raise a narrower question than the original motion: whether alleged address defects prevented these Creditors from protecting their rights before the applicable deadlines. Their own statements show that they did not. They establish actual knowledge, collective action, attendance at the section 341 meeting, direct advice from the United States Trustee, and consultation with multiple lawyers while time remained. The new record also conflicts with several categorical assertions in the reply. Because this sur-reply addresses only those new matters, the Debtor relies on her response for the governing standards and the arguments already presented.

## I. THE REPLY'S NEW AUTHORITIES INVOLVED TIMELY MOTIONS AND MATERIALLY DIFFERENT FACTS.

The reply says *In re Sheppard* commands a liberal extension. (ECF No. 32, Page 3 of 7.) Sheppard instead involved a creditor who first learned of the case on May 28, filed an extension motion on May 29, and beat the May 30 deadline. The

court treated that one-day response as proof of diligence and limited its rule to timely motions when circumstances merit relief. *In re Sheppard*, 532 B.R. 672, 675, 677, 679-80 (B.A.P. 6th Cir. 2015). It also expressly declined to decide whether the mailed notice was legally sufficient. *Id.* at 679 n.2. Here, the group coordinated by March 11, received advice on March 13 and 17, and filed nothing until June 8.

*In re Ellison* is likewise a timely-motion case. The creditor filed on July 3, before the July 11 Rule 4007(c) deadline, and had pursued information through an informal Rule 2004 request and then a formal motion that the debtor resisted. In granting leave, the court relied on errors proven at a two-day evidentiary hearing and described the standard as the low threshold for timely motions. *In re Ellison*, No. 25-10859, 2026 Bankr. LEXIS 1270, at *18-*22, *26-*28 (Bankr. S.D. Ohio May 20, 2026). The statements here identify no request the Debtor refused, no Rule 2004 motion, no subpoena, and no order the Debtor violated. Neither case excuses a post-deadline motion by creditors with weeks of actual knowledge.

## II. THE CREDITORS' OWN STATEMENTS UNDERCUT THE REPLY'S NOTICE AND DILIGENCE NARRATIVE.

Creditors do not have any credibility because the reply's blanket assertions cannot be reconciled with the subsequently filed statements. The material conflicts are apparent as demonstrated below:

| Statement presented to the Court | What the Creditors' own record shows |
|---|---|
| Creditor, Van Black was omitted entirely from the schedules. (Reply, ECF No. 32, Page 2.) | Van Black says the original filing listed her as a creditor care of attorney Joseph Uhl. (ECF No. 36, Van Black Statement para. 7, Page 45.) |
| No creditor received actual notice at a checked mailbox. (Reply, Page 4.) | DeHerder's attorney told her on February 23; the creditor group met on March 11; members attended the March 12 section 341 meeting; and the Trustee advised them on March 13 and 17 to protect their rights. (ECF No. 36, Pages 4, 6, 25, 32, 40-41, 45.) |
| Once the Creditors coordinated, they moved within roughly five weeks. (Reply, Page 4.) | Four statements corroborate a March 11 group Zoom. The June 8 motion followed about 89 days later. By April 27, every group member had reportedly consulted lawyer after lawyer and was considering a pro se filing. (ECF No. 36, Pages 25, 32, 40-42, 45.) |

Of these statements, the admission that the creditors were considering a pro se filing is considerably damning. It means the creditors knew that they had a deadline to meet and that there was an option to meet that deadline available (filing pro se), but then purposefully rejected that option.

Moreover, the initial amended motion also admitted that every moving creditor except David and Mary Kassa received the original notice. (ECF No. 21, para. 3, Page 2 of 82.) The reply calls that admission imprecise, but the supplement does not erase it. Instead, the supplement establishes additional routes of actual knowledge. Notice through attorneys was not random: those attorneys had asserted the same claims shortly before bankruptcy, and DeHerder's attorney actually relayed the filing. Whatever legal conclusion follows from a particular mailing, the alleged address defects did not keep the group ignorant or cause its delay.

The Kassa typographical issue is similarly immaterial to causation. Omitting the word 'Hill' from 'Autumn Hill Drive' did not prevent both Kassas from joining the March 11 Zoom, and David Kassa attended the next day's section 341 meeting. No statement identifies returned mail, failed delivery, or delay caused by the typo. Actual knowledge gave each creditor time to calculate the deadline, seek an examination, request documents, file a protective complaint, or timely request an extension. Their statements identify no Debtor conduct that foreclosed any of those steps.

## III. THE SUPPLEMENT'S REMAINING NEW POINTS DO NOT SUPPORT RELIEF.

First, five of the six submitted statements are not affidavits or valid unsworn declarations. The supplement concedes that only Emma DeHerder signed before a notary. (ECF No. 36, paras. 2-6, Pages 1-2.) The notary blocks for David Kassa, Mary Kassa, Lyle Masserant, Tom Piros, and Marcie Van Black are blank, and none states that it is true under penalty of perjury as 28 U.S.C. section 1746 requires. *See Pollock v. Pollock*, 154 F.3d 601, 612 n.20 (6th Cir. 1998); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991). William DeHerder, Erica Crock, and Connie Masserant submitted no statement. Counsel's belief in accuracy cannot supply an oath or personal knowledge. Even if considered, the statements prove actual knowledge rather than notice-caused delay.

Second, the reply incorrectly asserts that the Kassa and Crock debts are automatically nondischargeable under § 523(a)(3)(B). (ECF No. 32, Page 6.) Omission from the schedules, standing alone, does not establish nondischargeability. Each creditor must prove that the debt arose from fraud, fiduciary misconduct, or willful and malicious injury under § 523(a)(2), (4), or (6). *Couch v. Panther Petroleum, LLC*, No. 17-5194, slip op. at 3–4; 704 Fed. Appx. 569 (6th Cir. Nov. 6, 2017). The creditor must also establish that it lacked notice or actual knowledge of the bankruptcy in time to file a timely complaint. 11 U.S.C. § 523(a)(3)(B). The Creditors' own statements establish timely actual knowledge.

Section 523(a)(3)(B) therefore does not make these debts automatically nondischargeable or excuse the missed deadline.

Third, the reply's no-delay argument relies on the United States Trustee's separate extension through July 10. (ECF No. 32, Pages 4-5.) But the reply was filed August 3, after that date had passed, and the Creditors request at least 60 days after entry of a new order. Their requested period is not parallel to the Trustee's expired period. The supplement confirms that the Trustee told the group he did not represent their individual interests and that they needed to protect their own rights. (ECF No. 36, Piros Statement para. 7, Page 40.)

## CONCLUSION

The new authorities do not support a late motion, and the new statements establish actual knowledge, early coordination, access to counsel, and no causal connection between the alleged address defects and the missed deadlines. They also conflict with the reply's assertions about Van Black, timing, and notice; most are unsworn; and three movants supplied none. For these reasons, and those stated in the Debtor's response, the Court should deny the amended motion.

Respectfully submitted,
**APEX LAW**

/s/ Tyler P. Phillips
**Tyler P. Phillips (P78280)**
Attorney for Debtor
32900 Five Mile Road
Livonia, Michigan 48154
(734) 888-8399
tphillips@apexgrouplaw.com